Mr. Chief Justice Shakkey
delivered the opinion of the court.
The complainant filed this bill in the vice-chancery court, to quit his title to a half section of land, by removing an alleged cloud or incumbrance held by respondent.
It appears that the land was owned by a Chickasaw Indian, known by the name of William McGilvery, who acquired it under the treaty between the United States and the Chickasaws. He sold to the complainant, with all due ceremonies required by the fourth article of the treaty, on the 16th of August, 1843, and if he then owned the land the complainant’s title is perfect. The incumbrance complained of is a title acquired by virtue of a sheriff’s sale; but it is alleged that the sheriff’s deed is void, because he sold under a void judgment, rendered in an attachment suit. The objections to the judgment are two; first, that it does not appear by the record that publication was made, as required by the attachment law in cases against absconding debtors ; and, .second, that the defendant in the attachment was not the person under whom complainant claims, but a fictitious person. The further ground is also taken that, as the Indians could only convey their lands on the conditions prescribed by the fourth article of the treaty, this land was not subject to sale under process of execution.
The answer sets up a title in the respondent, who derived it from Coopwood, who purchased at sheriff’s sale on the 1st of April, 1839, and avers that it was regularly sold under a judgment, in a suit commenced by attachment by Coopwood against Coahoma, which was the tribal or Indian name of the said William McGilvery, the same person under whom complainant claims. The proceedings in attachment and the sheriff’s deed are made exhibits to- the answer, and a witness was examined who stated that, about twenty years ago, he knew very well a *695 Chickasaw Indian called Coahoma, who was also called William McGilvery, and as well known by one name as by the other.
The attachment was regularly served out, and an order of publication made, which appears upon the record, but the record furnishes no other evidence that the publication was made than that contained in the recital in the judgment, in these words : “ This day came into court the plaintiff by attorney, and after evidence of publication, and the defendant not having said any thing in bar or preclusion of the plaintiff’s action, but hath therein wholly made default,” &c. In regard to the effect of recitals of jurisdictional facts, a distinction is, to be observed between courts of general jurisdiction and courts of limited jurisdiction. As to the former, every presumption is in favor of the regularity of their proceedings, whilst in regard to the latter, every thing must appear regular on the face of the record. And although the effect of recitals of jurisdictional facts is a question which has given rise to a great diversity of decisions, the better opinion seems to be, that, as regards courts of general jurisdiction, they are to be taken as prima facie evidence. 3 Phil. Evid. 1013-1015; 4 Ib. 416; 8 Yerg. 432. We cannot therefore pronounce the judgment in the attachment suit void, as it is a recital of the judgment that there was evidence of publication. Whether- publication had or had not been made, was a question of fact to be ascertained by evidence; and as the.circuit court is a court of general jurisdiction, it is to be presumed from this recital that it had all the evidence before it to enable it to pronounce judgment. The attachment had been regularly levied on the land in question as the land of Coahoma, who was an absconding debtor, and was bound from that time. It is nowhere shown that the Indian had not been previously located on the land, or that the same was not his property.
By the fourth article of the treaty, it is recited that the Indians desire to have within their own control the means to take care of themselves ; but many of them were incapable of managing their affairs, and therefore it was provided that the reservations should not be permitted to be sold without a certificate of the Indian’s capacity, made by certain persons therein named, and *696 also that the sale should be approved by'the president. Now it is contended, that, as the Indian could not sell without the requisite ceremonies, therefore his land could not be sold under process of execution. This does not by any means follow. It would require a law of the state, or provision in the treaty with the assent of the state, to exempt it from such liability, or a provision law, disabling them from making any debt which should impose responsibility; for if they can create a debt by valid contract, the means' of enforcing it necessarily follow, in the absence of an express exemption. Nor do the evils intended to be guarded against by the treaty follow as a consequence of forced sales, for the law presumes that property so sold brings its value. The validity of the contract, which was the foundation of the attachment, cannot now be called in question.
It is not to be admitted that either of the parties to this treaty, or both together, had the power to create the exemption contended for. Property within a state is subject to its jurisdiction and laws; and although the granting power may limit the grantor to a certain mode of conveyance, it cannot invest him with the absolute property, and at the same time say it shall not be subject to execution. That would be trenching too far on state sovereignty. The assent of the state would be an indispensable requisite to the exercise of such power on the part of the general government, either by law or by treaty stipulation. A married woman cannot convey her property, except by the joint deed of husband and wife; does it thence follow that it is not liable for any debt which she may legally contract 1
If the defendant in the attachment was not the same individual who conveyed to the complainant, or was a fictitious person, then, of course, the respondent has no title. The proof tends to ■establish a contrary conclusion, although it may leave some room for doubt. But such a question can be much better determined at law, and we, therefore, leave the complainant to his legal remedy.
Decree dismissing the bill affirmed. Decree to be without prejudice to complainant’s rights at law.